# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| James Thomas Martin, Jr., ) | Civil Action No. 2:19-0774-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Town of Summerville and ) | |
| Nancy Sumersett, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Before the Court is Defendants' motion for summary judgment on all remaining claims. (Dkt. No. 40.) For the reasons set forth below, the motion is granted.

**I.    Background**

Plaintiff James Martin is an amateur tennis instructor who operated a program called "Tennis Development from the Heart" in which he provided tennis lessons to underprivileged children and other tennis students. Plaintiff conducted the tennis program at Doty Park, which is owned and operated by Defendant Town of Summerville (the "Town"). The Town gave Plaintiff permission to operate his program on the Doty Park tennis courts during specific times when they were not otherwise reserved for players by the Town. Plaintiff's tennis program was for one hour during two evenings a week. Plaintiff used up to two out of Doty Park's six tennis courts per evening. Plaintiff also supervised his students' "free play" sessions during additional evenings each week. Defendant Nancy Sumersett is the professional tennis instructor employed by the Town who has the exclusive right from the Town to provide paid tennis lessons on the Doty Park courts.

Plaintiff asserts that he and the majority of his students are African American, and Defendant Sumersett and the majority of her students are Caucasian. He alleges that Sumersett and other Town employees began interfering with him conducting his tennis program on the Doty Park courts, such as by unnecessarily reserving the courts and misdirecting individuals who sought out his program, despite the Town allowing the allegedly mostly Caucasian players in the United States Tennis Association to use the courts for periodic tournaments. Plaintiff alleges that the Town then allegedly instituted policy changes, such as prohibiting private tennis lessons except through the Town, and placed Plaintiff on a "no trespass" notice. The Town then directed Plaintiff to operate his program on the Saul Alexander Park's two tennis courts, but Plaintiff alleges that those courts are unsuitable because they are "old and cracked" and do not have public parking or restrooms. Plaintiff alleges that the Town does not interfere with a similarly situated Caucasian tennis instructor's use of the Doty Park courts.

Plaintiff brought three causes of action against the Town and Sumersett: (1) violation of 42 § 1981 for acting under color of state law to deprive Plaintiff of his lawful use of public tennis courts and disparately impacting him; (2) violation of 42 U.S.C. § 2000a, *et seq.* for discriminating against Plaintiff in a place of public accommodation; and (3) violation of S.C. Code Ann. § 45-9-10, *et seq.* for denying Plaintiff full use and enjoyment of the place of public accommodation. As to Sumersett, each claim was brought against her in her official capacity as an employee of the Town and in her individual capacity. (Dkt. No. 1.) The parties then consented to dismissal with prejudice of "any state court claims brought against Nancy Sumersett in her official capacity[.]" They reasoned that because the complaint "implies that Defendant Sumersett is being sued under the [South Carolina Tort Claims Act] in her official capacity, the parties hereby agree that only those claims" should be dismissed. The parties further noted that the "remaining claims against

the Town of Summerville and Nancy Sumersett shall continue." (Dkt. No. 11.) The Court granted their motion and dismissed with prejudice the third cause of action against Sumersett for violation of S.C. Code Ann. § 45-9-10. (Dkt. No. 14.)

In September 2020, the parties filed a post-mediation joint status report, noting that the Town had offered to allow Plaintiff to continue teaching his tennis lessons to underprivileged youth at the Saul Alexander Park's tennis courts in downtown Summerville for two evenings a week, from 6:30 PM to 8:30 PM, and further agreed to upgrade those facilities to ensure proper lighting and restrooms. But, the parties reported, settlement negotiations stalled around discussions of Plaintiff's use of the Doty Park tennis courts and his demand for monetary damages. (Dkt. No. 28.) Plaintiff then terminated his counsel's representation and proceeded *pro se*. (Dkt. No. 36.)

Defendants now seek summary judgment on all remaining claims, which are: (1) violation of § 1981 by the Town and Sumersett in her individual capacity; (2) violation of § 2000a, *et seq*. by the Town and Sumersett in her individual capacity; and (3) violation of S.C. Code Ann. § 45-9-10 by the Town. (Dkt. No. 40.) Plaintiff responded in opposition, to which Defendants replied. (Dkt. Nos. 41, 45.)

## II.     **Legal Standard**

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *See id.* Therefore, summary judgment should be granted "only when it is clear that

there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir. 1987).

"In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment must demonstrate that specific, material facts exist that give rise to a genuine issue. *See id.* at 324. "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence.'" *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III.    Discussion

#### A.    First Cause of Action for Violation of 42 U.S.C. § 1981

Section 1981 is a federal anti-discrimination law providing that all people in the United States have the same right to the full and equal benefit of all laws for the security of persons and property as are enjoyed by white citizens. To prevail on a § 1981 action, "a plaintiff must prove that: (1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute[.]" *Bobbitt by Bobbitt v. Rage, Inc.*, 19 F. Supp. 2d 512, 517 (W.D.N.C. 1998). The critical element of a § 1981 claim is the showing of intentional discrimination, rather than merely that the defendant adopted a policy or practice that had a disparate impact on minorities. *See General Building Contractors Ass'n Inc. v. Pennsylvania*, 458 U.S. 375 (1982). A plaintiff may

establish a *prima facie* case of discrimination through either direct evidence of intentional discrimination or circumstantial evidence that creates a reasonable inference of discrimination. If a plaintiff relies on circumstantial evidence, the burden of production (but, not the burden of persuasion) shifts to the defendant to provide a legitimate and non-discriminatory reason for its conduct. *See Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000). And, the U.S. Supreme Court's ruling in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is "a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

Regardless of the type of evidence on which the plaintiff relies, he must first establish a *prima facie* case of discrimination. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000). In order to do this, the plaintiff must establish: "(1) he is a member of a protected class; (2) he sought to enter into a contractual relationship with the defendant; (3) he met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004). If the plaintiff is able to satisfy these requirements, the defendant "may respond by producing evidence that it acted with a legitimate, nondiscriminatory reason, and then the plaintiff may adduce evidence showing that the defendant's proffered reasons was mere pretext and that race was the real reason for the defendant's less favorable treatment of plaintiff." *Id*.

As an initial matter, the record reflects that after Summerville Councilman Aaron Brown advocated for Plaintiff and his tennis program, the Town deemed the program an exception to its

general policy against unauthorized tennis lessons and allowed Plaintiff to conduct his program on two Doty Park tennis courts for two hours at a time, three days a week. (Dkt. Nos. 40-2.) Plaintiff does not dispute these facts. (Dkt. No. 41 at 2.) It is unclear, then, what opportunity the Town denied Plaintiff during that time. *See Celotex Corp.*, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial.").

Nevertheless, "[t]o prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp.*, 140 S. Ct. at 1019. "Here, a plaintiff bears the burden of showing that race was a but-for cause of its injury." *Id*. at 1014. "If the defendant would have responded the same way to the plaintiff even if he had been white, an ordinary speaker of English would say that the plaintiff received the 'same' legally protected right as a white person. Conversely, if the defendant would have responded differently but for the plaintiff's race, it follows that the plaintiff has not received the same right as a white person." *Id*. at 1015. Here, the Town argues that Plaintiff cannot demonstrate that his race was a but-for cause of any injury. For instance, the record reflects that it is the Town's general policy that private tennis lessons may only be provided by Town-employed professional instructors such as Sumersett, with fees collected by the Town and not the individual instructor. This policy applies uniformly to everyone giving or taking any lesson on the Doty Park tennis courts. The record further reflects that this preexisting policy was the Town's reason to seek to prohibit Plaintiff from providing his own tennis lessons, whether the lessons were free or for payment, on the Doty Park courts. Mr. Doyle Best, director of the Town's Parks and Recreation Department, as well as Sumersett, attest to these facts, and they appear undisputed on this record. (Dkt. Nos. 40-1, 40-2.) This reason, moreover, appears legitimate rather than improperly motivated by race. And, as to Plaintiff's argument that USTA team captains or Sumersett made disparaging comments to

Plaintiff or to his students, "remarks standing alone are not enough to establish discriminatory intent" that could be attributable to the Town. *Martin v. Orthodontic Centers of S.C., Inc.*, 93 F. Supp. 2d 682, 685 (D.S.C. 1999); *see also Buchanan*, 335 F. Supp. 2d at 697 (noting that in *Martin*, "co-workers who did not possess any authority over the plaintiff and their isolated—albeit reprehensible and offensive—comments were insufficient as a matter of law to link any discriminatory intent with the plaintiff[.]"). On this record, therefore, Defendants are entitled to summary judgment on the first cause of action.

**B.     Second Cause of Action for Violation of 42 U.S.C. § 2000a*, et seq.***

Title VII of the Civil Rights Act of 1964 provides that all persons are entitled to full and equal enjoyment of any place of public accommodation without racial discrimination. This law must "be accorded a liberal construction in order to carry out the purpose of Congress to eliminate the inconvenience, unfairness, and humiliation of racial discrimination." *United States v. Med. Soc'y of S.C.*, 298 F. Supp. 145, 151 (D.S.C. 1969). "It is well recognized that the same *prima facie* test as applies to § 1981 cases applies to cases under § 2000a." *Eddy v. Waffle House, Inc.*, 335 F. Supp. 2d 693, 701 (4th Cir. 2004).

First, Title VII provides only for injunctive relief, not for monetary damages. 42 U.S.C. § 2000a-3(a). "When a plaintiff brings an action under [Title VII], he cannot recover damages." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968). Because Plaintiff here seeks damages and not an injunction (Dkt. No. 1 at 9, 11), this claim necessarily fails. Next, the Town argues that the record reflects Plaintiff failed to demonstrate that "(3) he met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers." *Williams*, 372 F.3d at 667.

For instance, Plaintiff testified that he understood the Town's policy to be intended to prevent any and all instructors not employed by the Town from overwhelming the public tennis courts such that the courts could not be reasonably used by citizens of the Town, that the Town turning off the night lights over the courts affected both league and nonleague players, and that the lights being off did not impact Plaintiff's ability to teach his students. (Dkt. No. 40-3 at 11, 13-15.)  For these reasons and because the same *prima facie* test applies as to the previous claim for violation of § 1981, Defendants are entitled to summary judgment on this claim.

**C.     Third Cause of Action for Violation of S.C. Code Ann. § 45-9-10, *et seq.***

This South Carolina statute provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in Article 1 of this chapter, without discrimination or segregation on the ground of race, color, religion, or national origin." S.C. Code Ann. § 45-9-10(A).  Section 45-9-10 is, therefore, substantively identical to 42 U.S.C. § 2000a. *See, e.g.*, *Nat'l Ass'n for the Advancement of Colored People, Inc. v. Molly Darcy, Inc.*, No. 4:11-cv-1293-RBH, 2012 WL 4473138, at n.7 (D.S.C. Sept. 26, 2017) ("Both § 2000a and S.C. Code Ann. § 45-9-10 provide" for non-discrimination on race at public accommodations and "it is also well recognized that the same *prima facie* test applies in § 1981 cases applies to claims under § 2000a.").  District courts customarily decline to exercise supplemental jurisdiction over a state law claim when the federal claims are dismissed. *See* 28 U.S.C. § 1367; *Godwin v. Tween Brands, Inc.*, No. 3:15-cv-1493-CMC, 2015 WL 3820008, at *3 (D.S.C. June 18, 2015) (declining to exercise jurisdiction over claim for violation of § 45-9-10 where claim for violation of § 1981 was dismissed).  "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  Therefore, "if the federal

claims are dismissed before trial, . . . the state claims should be dismissed as well. *Id*. Having here dismissed the federal claims in the first and second causes of action, the Court declines to exercise jurisdiction over this remaining state law claim and accordingly dismisses it without prejudice.

In sum, the Court has carefully considered the arguments raised in Plaintiff's opposition briefing and finds that the remaining claims brought in his complaint should be dismissed. Defendants separately argue that the claims against Sumersett must be dismissed under the doctrine of qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The Court need not reach the merits of that argument in light of having dismissed the first two claims on the merits and declining to exercise supplemental jurisdiction over the third claim.

### III. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 40) is **GRANTED**. The first cause of action for violation of 42 U.S.C. § 1981 by Defendants and the second cause of action for violation of 42 U.S.C. § 2000a, *et seq.* by Defendants are **dismissed with prejudice**. The third cause of action for violation of S.C. Code Ann. § 45-9-10, *et seq.* by Defendant the Town is **dismissed without prejudice**.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

May 20, 2021
Charleston, South Carolina